IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JAMES FRANCIS HADDOCK, | ) | Civil Action No. 2: 12-cv-0175 |
|---|---|---|
| Petitioner, | ) | |
| | ) | United States District Judge |
| v. | ) | Mark R. Hornak |
| | ) | |
| JOHN KERESTA, Superintendent, and THE DISTRICT ATTORNEY OF ALLEGHENY COUNTY, | ) | United States Magistrate Judge Cynthia Reed Eddy |
| Respondents. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, James Francis Haddock, pursuant to 28 U.S.C. § 2254, be dismissed and that a certificate of appealability be denied**.**

**II.    REPORT**

    **A.    Relevant and Procedural Background**

Petitioner, James Francis Haddock ("Petitioner" or "Haddock"), is a state prisoner confined at the State Correctional Institution – Dallas in Dallas, Pennsylvania. He is challenging the judgment of sentence that was imposed upon him by the Court of Common Pleas of Allegheny County on April 19, 2005.   The Superior Court of Pennsylvania described the evidence presented at trial as follows:

> [In] the early morning of March 11, 2004, police were dispatched to investigate a report of shots being fired at the residence of Robbie Golofsky. Upon arrival, the Golofskys informed the officers that they had no information about shots being fired. The officers then proceeded to Forbes Regional Hospital to investigate a gunshot victim who recently had been admitted.

1

At Forbes Regional, the officers learned the victim's name was Bonnie Long. They were told that Long had been brought to Forbes Regional by Eric Katavitch, that Long had been shot at the Golofsky residence, and that the truck in which she was shot was parked outside the hospital. Long was later declared dead from a single gunshot wound that caused massive chest trauma.

Armed with this information, the officers returned to the Golofsky residence to initiate a full investigation. Immediately, the officers were able to recover shell casings, shattered glass, and drug paraphernalia that had been littered around the Golofsky residence and yard. The discovery of this evidence prompted the officers to confront Robbie Golofsky once more. Eventually, Robbie admitted to the officers that Long's shooter was armed and hiding in the [Golofskys'] basement.

After being let into the Golofsky home, the officers proceeded to the basement and arrested [Haddock]. While executing a search incident to the arrest, the officers found an empty .380 caliber handgun on [Haddock's] person and a live .380 round in [Haddock's] pocket.

At trial, the evidence established that the shooting was precipitated by a drug transaction gone wrong. On March 10th, Katavitch went to the Golofsky home and dropped off money so that Robbie could purchase cocaine, which Katavitch planned on picking up later that evening. After a night of drinking, Katavitch along with the victim, Long, returned to the Golofsky residence to pick up the cocaine.

When Katavitch and Long arrived at the Golofsky residence, [Haddock], witness Nick Vesely, and another man, Jason Dunn, were sitting in a car in front of the residence; Robbie Golofsky was in the vehicle but was hiding underneath some coats in the back seat. Katavitch knocked on the Golofsky's house door but there was no answer. Katavitch then approached the car, but was told Robbie was not around. Katavitch and Long then left the area.

A few minutes, Katavitch and Long returned. Katavitch parked his vehicle behind the car where [Haddock] was sitting and again got out to look for Robbie. This time, however, Katavitch noticed a running car sitting in the Golofskys' drive way. Katavitch proceeded to take the keys out of the vehicle and then again approached the car where [Haddock] was sitting.

[Haddock] was sitting in the front passenger seat of the car. When Katavitch approached the vehicle with the car keys and asked where Robbie had gone, [Haddock] stated that the keys belonged to him. [Haddock] then pulled a gun and fired a single shot at Katavitch, apparently missing his target. Katavitch immediately retreated to his vehicle, where Long had been sitting, and attempted

2

to leave the scene. In order to escape and get off the narrow dead-end road, Katavitch had to pass the car in which [Haddock] was sitting.

As Katavitch and Long drove off, [Haddock] emerged from the car and fired two more shots, the casings of which were recovered from the scene. One of the shots entered Katavitch's window, passed Katavitch, entered Ms. Long's left arm, and then passed through her chest cavity. The second shot hit Katavitch's left rear fender.

*Commonwealth v. Haddock*, 927 A.2d 651 (Pa. Super. Ct. 2007), (unpublished memorandum), *appeal denied*, 931 A.2d 656 (Pa. 2007), *cert. denied*, 552 U.S. 1208 (2008) (ECF No. 18-4).

On April 19, 2005, after a six day jury trial before the Honorable John A. Zottala, Haddock was convicted of first degree murder, attempted murder, aggravated assault, carrying a firearm without a license, and recklessly endangering another person. On July 12, 2005, Haddock was sentenced to life without parole for the first degree murder conviction, and to a concurrent, aggregate term of not less than seven nor more than twenty years in prison, for his conviction of attempted murder. No further penalty was imposed on the remaining convictions. Attorney James A. Wymard represented Haddock during trial and at sentencing.

Haddock, through Attorney Norma Chase, filed a timely Notice of Appeal with the Pennsylvania Superior Court, which was docketed at 1366 WDA 2005. On appeal, Haddock raised the following issues:

Argument 1: The trial court erred in permitting testimony as to Haddock's drug dealing; and

Argument 2: The trial court erred in refusing to charge the jury on justification, voluntary manslaughter, and involuntary manslaughter.

Brief for Appellant. (ECF No. 18, Exh. 3 at 14, 17.) The Superior Court, by Order dated March 20, 2007, affirmed the judgment of sentence. *Commonwealth v. Haddock*, No. 1366 WDA 2005, 927 A.2d 651 (Pa. Super. Ct. 2005) (ECF No. 18-4 at 1 - 13). On August 30, 2007, the

3

Pennsylvania Supreme Court denied further review. *Commonwealth v. Haddock*, No. 183 WAL 2007, 931 A.2d 656 (Pa. 2007) (ECF No. 18-6 at 1.) Haddock, pro se, filed a Petition for a Writ of Certiorari in the Supreme Court of the United States, which was denied on February 19, 2008. *Haddock v. Pennsylvania*, 128 S.Ct. 1263 (2008) (ECF No. 18-6 at 2, 15).

On February 10, 2009, Haddock filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 – 9546. (ECF No. 18-7 at 1). On February 18, 2009, the court appointed Patrick Nightingale, Esquire, to represent Haddock in his post-conviction proceedings. (ECF No. 18-7 at 6). On November 17, 2009, Attorney Nightingale filed an Amended PCRA Petition and raised the following ineffective assistance of counsel claims:

> Claim I – Ineffective Assistance of Appellate Counsel. Appellate counsel was ineffective for failing to challenge the sufficiency of the evidence presented to convict [Haddock] of Murder in the First Degree where evidence of record demonstrated that [Haddock] was too intoxicated to form the specific intent to kill as required for a verdict of guilty.
>
> Claim II – Ineffective Assistance of Counsel. Appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for forcing [Haddock] to testify where trial counsel knew that [Haddock] would make a poor witness and would jeopardize [Haddock's] claim of involuntary intoxication sufficient to negate the specific intent to kill.

Amended PCRA Petition. (ECF No. 18-7, at 11, 12-13). On December 22, 2009, the PCRA court issued a Notice of Intent to Dismiss the PCRA petition as frivolous. Attorney Nightingale filed a response to the proposed dismissal on December 29, 2009, and Haddock filed a *pro se* Motion for Leave to Amend the petition and request for new counsel on January 14, 2010.[1] On February 1, 2010, the PCRA Court dismissed the Petition without a hearing. (ECF No. 18-11).

---

[1] Because Haddock was actively represented by counsel when he filed his *pro se* Motion for Leave to Amend the First PCRA Petition, the PCRA court refused to consider the *pro se* motion.

Haddock, through Attorney Nightingale, filed a timely Notice of Appeal on February 16, 2010, which was docketed at No. 268 WDA 2010. On March 25, 2010, Haddock, *pro se*, filed a request to proceed *pro se* on appeal, which request was granted by the PCRA court.

On August 19, 2010, Haddock, now acting *pro se*, filed a petition to remand for correction of the certified record and for leave for remand for the filing of a supplemental Rule 1925(b) concise statement *nunc pro tunc*. The Superior Court denied both requests without prejudice.

In his *pro se* appellate brief, Haddock raised the following two claims:

1.  Nightingale's failure to raise and preserve the two claims that [Haddock] wanted to present to the PCRA court is preserved for appellate review, and that failure – amounting to ineffectiveness – warrants a remand to provide [Haddock] a meaningful opportunity to obtain review of his claims and also permit him to file a supplemental 1925(b) statement *nunc pro tunc* should the PCRA court not grant a new trial. [2]

2.  Trial counsel was ineffective for failure: (1) to advise [Haddock] that the trial court (or trial counsel) could not "compel" him to testify in exchange for jury charges on justification and imperfect justification where the evidence that the truck was coming at him was already in the Commonwealth's case in chief, and (2) because the "compelled" testimony negated his voluntary intoxication defense, to request a mistrial once the trial court refused to give the charges it represented would be given if [Haddock] took the stand and testified the truck was coming at him.

Brief for Appellant. (ECF No. 18-19, at 7).

On July 18, 2011, the Superior Court found that the issues raised by Haddock in his *pro se* appellate brief were waived and affirmed the dismissal of the PCRA Petition, based on the PCRA court's opinion, which addressed the issues raised by counsel in the timely filed Rule 1925(b) Concise Statement. *Commonwealth v. Haddock,* No. 268 WDA 2010 (Pa. Super. 2011).

---

[2] The two claims that Haddock wanted Nightingale to raise are those set forth as Claim Two in his *pro se* appeal.

(ECF No. 18-12 at 1-6).  The Pennsylvania Supreme Court denied further review on April 25, 2012.  *Commonwealth v. Haddock,* No. 557 WAL 2011 (Pa. 2012) (ECF No. 18-14 at 1).

On or about June 22, 2012, Haddock, *pro se*, filed a "Second Petition for Post Conviction Collateral Relief." (ECF No. 18-14).  Haddock acknowledged that his petition was outside of the PCRA's one-year time-bar, but argued that the petition was timely under the "governmental interference" and "after discovered facts" exceptions to the PCRA time bar.  On September 5, 2012, the PCRA court notified Haddock that it intended to deny the second PCRA petition as untimely.  On September 28, 2012, the PCRA dismissed the second petition and Haddock filed a timely notice of appeal to the Superior Court.  On appeal, Haddock raised the following two claims:

> 1.  Because the PCRA court failed to address or respond appropriately to [Haddock's] *pro se* request to amend PCRA counsel's defective amended petition, [Haddock's] position is that the failure to raise his two substantive claims previously was the result of "government interference" by the PCRA court, and therefore, his PCRA II petition is timely under the statutory timeliness exception of government interference.
>
> 2.  Because the Memorandum Opinion issued by the Superior Court on [Haddock's] initial PCRA appeal notified him of the unknown facts of that Court's interference with the presentation of his two substantive claims in violation of the laws of this Commonwealth, [Haddock's] position is that his otherwise untimely PCRA II petition is timely under the statutory timeliness exception of "government interference" and "newly discovered facts" of the PCRA.

(ECF No. 18-17, at 8).

On July 29, 2013, the Pennsylvania Superior Court issued an opinion affirming the denial of Haddock's second petition on the basis of untimeliness.  *Commonwealth v. Haddock,* No. 1643 WDA 2012, slip op. (Pa. Super. Ct. 2013).  (ECF No. 18-19 at 1-16).  The Pennsylvania Supreme Court denied further review on January 4, 2014.  (ECF No. 18-20).

While his first PCRA petition was pending before the Pennsylvania Supreme Court, Haddock, on February 13, 2012, initiated the present proceedings in this Court by filing a *pro se* petition for writ of habeas corpus. He raises four claims for relief. Petition Under § 2254 for Writ of Habeas Corpus. (ECF No. 1). Due to the pending state court proceedings, the federal habeas case was stayed until Haddock's state court collateral review claims had been resolved. On January 31, 2014, Haddock filed a motion to reopen the instant proceedings, which motion was granted on February 3, 2014. Respondents filed an Answer on February 24, 2014, (ECF No. 18), to which Haddock filed a Reply on September 26, 2014. (ECF No. 20). *See* Local Rule 2254(E)(2) (a petitioner "may file a reply . . . within 30 days of the date the respondent files its answer."). The matter is ripe for disposition.

**B.     Standard of Review**

1. <u>28 U.S.C. § 2254</u>

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Haddock's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See., e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See also Real v. Shannon,* 600 F.3d 302-309-10 (3d Cir. 2010).

As codified at 28 U.S.C. § 2254(d), AEDPA provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Our Court of Appeals has made clear that "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman,* 160 F.3d 941, 954 (3d Cir. 1998). Put simply, "habeas proceedings are not the appropriate forum for [a prisoner] to pursue claims of error at the PCRA proceeding . . . . It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004).

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See., e.g., Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court).

2. Procedural Issues

Before the Court can address the merits of Haddock's claims, it is necessary to examine whether the petition fulfills the applicable procedural requirements, as set forth in AEDPA.

    a. *AEDPA's Statute of Limitations*

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Respondents do not dispute that Haddock's petition was timely filed.

    b. *Exhaustion*

Next, the court must determine whether Haddock's claims have been adequately exhausted in the state courts as required by 28 U.S.C. § 2254(b) and (c). It is well settled that, as a matter of comity, the state should be provided with the first opportunity to consider the claims of constitutional violations and to correct any errors committed in its courts. *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 517 (1982). The burden is on the habeas petitioner to establish that he has presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)). In Pennsylvania, this requirement generally means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then to the Superior Court either on direct or PCRA appeal. *See, e.g., Lambert,* 387 F.3d at 233-34.[3] The petitioner retains the burden of showing that the claims he is raising in federal court are the

---

[3] Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address the claim. *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007).

"substantial equivalent" of those presented in state court. *Santana v. Fenton*, 685 F.2d 71, 73-74 (3d Cir. 1982). A federal court may deem a claim unexhausted if a petitioner raises arguments based entirely on state rather than federal law. *Bronshtein v. Horn*, 404 F.3d 700, 725-726 (3d Cir. 2005).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate remedy exists. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). This Court can deny an unexhausted claim on the merits only if the claim is without merit.

      c.    *State Court Procedural Default*

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." *Gray v. Netherland*, 518 U.S. 152, 162, (1996); *Sistrunk v. Vaughn*, 96 F.3d 666, 675 (3d Cir. 1996); *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts should not reach an alleged violation of federal law on habeas review if the state court's decision rests on an independent and adequate state ground. *Coleman*, 501 U.S. at 750. "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307 (2011). The doctrine applies whether the default occurred at trial, on appeal, or during collateral proceedings, *Edward v. Carpenter*, 529 U.S. 446, 451 (2000), and applies only when a state procedural rule is consistently and regularly applied.

*Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 588–89 (1988)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either (i) "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice" or that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Martinez v. Ryan*, -- U.S. ---, 132 S. Ct. 1309 (2012). The United States Supreme Court has defined "cause" as "some objective factor external to the defense." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. *Id.*

The second exception to the procedural default rule arises when a petitioner demonstrates that failing to allow his claims to proceed would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320-22 (1995) (decided in the context of successive petition). To show a fundamental miscarriage of justice, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 321 (quoting *Murray*, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. Once such evidence is presented, a petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327. There is no question that the instant case is not the

type of extraordinary case in which Haddock can overcome the default of his claims by way of the miscarriage of justice exception.

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72 (1977).

With these principles in mind, each claim will be examined to determine whether it was presented to all of the state courts and, if so, whether they decided it on the merits or on the basis of an independent and adequate state procedural rule.

### C. Discussion of Petitioner's Claims

In his federal habeas petition, Haddock raises the following four grounds for relief:

CLAIM ONE: "The Trial Court erred in permitting testimony as to Petitioner's drug dealing."

CLAIM TWO – "The Trial Court erred in refusing to charge the jury on justification, voluntary and involuntary manslaughter."

CLAIM THREE – "Trial Counsel was ineffective for failure to advise the Petitioner that neither the Court nor trial counsel could 'compel' him to testify in exchange for jury charges on justification and voluntary manslaughter."

CLAIM FOUR: "Trial Counsel was ineffective for failing to request a mistrial when the court declined to give the very jury charges it had earlier ruled it would give if the Petitioner testified the truck was coming at him, which Petitioner did."

Respondent argues that Claims One and Two are unexhausted because neither claim was "fairly presented" as a federal claim in state court and that Claims Three and Four are procedurally defaulted because the Pennsylvania Superior Court held that both these claims were waived under Pennsylvania Rules of Appellate Procedure. In the alternative, Respondent argues that Claims Three and Four should be dismissed as they are without merit.

a. *Claims One and Two Are Unexhausted And, Therefore, Procedurally Defaulted*

A review of the state court record reveals that the arguments Haddock made with respect to Claims One and Two were presented as state law issues to the state courts, not as federal constitutional claims. Therefore, as federal constitutional issues, they are unexhausted. *See Bronshtein v. Horn*, 404 F.3d 700, 726 (3d Cir. 2005) (citing *Keller v. Larkins*, 251 F.3d 408, 413-15 (3d Cir. 2001)).

As to Claim One, there is no doubt that Haddock challenged the trial court's ruling in permitting testimony as to Haddock's past drug dealing, but Haddock did not give the state courts "fair notice" that he was asserting a federal constitutional claim rather than a claim that the trial court violated state rules of evidence. On direct appeal, Haddock's Superior Court brief cited only Pennsylvania Rule of Evidence 404(b) and relied exclusively upon a state case based on state law, *Commonwealth v. Spruill*, 391 A.2d 1048 (Pa. 1978). The brief cogently argued that the admission of the evidence in question violated the governing Pennsylvania standards regarding proof of uncharged bad acts and that the evidence should have been excluded on the ground that its prejudicial impact outweighed its probative value. Neither the federal constitution nor any judicial decision based on the federal Constitution was mentioned. Haddock's petition for allowance of appeal to the Supreme Court of Pennsylvania contained similar arguments. *See* Petition for Allowance of Appeal at 6 – 9 (ECF No. 18-5). Neither the Superior Court brief nor the petition for allowance of appeal fairly presented a federal constitutional claim. The Superior Court, the highest state court to entertain Haddock's claim on the merits, understood the claim to be based on state law, and this reading was entirely reasonable. Therefore, Claim One is unexhausted.

Moreover, to the extent that Haddock raises the issue as a challenge to a state court evidentiary ruling, it is not cognizable in federal habeas corpus. The Supreme Court of the United States has held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62. 67-68 (1991) (citations omitted). State court determinations as to the admissibility of evidence, or in this case testimony, to the extent that they are allegedly erroneous under state law, do not present issues cognizable in federal habeas corpus. *Romano v. Oklahoma*, 512 U.S. 1, 10 (1994).

Claim Two fails for the same reasons as Claim One, i.e., it was raised solely as a state law claim in the state courts, namely error by the trial court to give proper jury instructions. Haddock cited Pennsylvania cases on proper jury instructions in his direct appeal brief, and the Superior Court cited Pennsylvania cases on jury instructions in its opinion. Therefore, it was not presented as a federal constitutional issue. Accordingly, this claim also is unexhausted.

Because Haddock did not exhaust either Claim One or Claim Two, each claim is now procedurally defaulted. A petitioner who has defaulted a federal habeas claim can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." *See Coleman*, 501 U.S. at 750. Haddock points to no evidence and makes no allegation concerning cause for his default or prejudice stemming therefrom. Nor has Haddock sufficiently demonstrated "that this Court's refusal to reach the merits on this claim will cause a 'fundamental miscarriage of justice'." *Id*.

Accordingly, the Court finds that Haddock has provided no basis to overcome the default and recommends that Claims One and Two be dismissed.

      b.     *Claims Three and Four are Procedurally Defaulted*

The Pennsylvania Superior Court twice refused to address the claims raised in Claims Three and Four; first, finding that the claims had been waived for appellate review following Haddock's first PCRA petition and, second, finding that the claims were untimely and without exception to be heard in a second PCRA petition. In its July 29, 2013, Opinion the Superior Court explained why Haddock's claims were waived after his first PCRA petition:

> We concluded that Appellant was not entitled to file a Rule 1925(b) statement *nunc pro tunc*, as Appellant did not request leave to proceed pro se "until after [his appointed counsel] had filed a timely [c]oncise [s]tatement on [his] behalf" and Appellant failed to allege that "extraordinary circumstances" necessitated the filing of a new Rule 1925(b) statement. *Id.* at 4-5. Moreover, since Appellant failed to raise his substantive claims in his Rule 1925(b) statement, we concluded that Appellant had waived his remaining claims. *Id*. at 5-6. We thus affirmed the order dismissing Appellant's first PCRA petition and, on April 25, 2012, our Supreme Court denied Appellant's petition for allowance of appeal.

*Commonwealth v. Haddock*, No. 1643 WDA 2012, slip op. at 6-7 (Pa. Super. Ct. 2013) (ECF No. 18-19). In that same opinion, the Superior Court found that Haddock's second PCRA petition was untimely and without exception pursuant to 42 C.S.A. § 9545(b).[4]

As discussed *supra,* the doctrine of procedural default rests upon the "independent and adequate state grounds" doctrine. *Coleman*, 501 U.S. at 750. Here, the decision by the Superior Court to deny Haddock relief based upon state procedural grounds, Pennsylvania's Rule of Appellate Procedure 1925(b), and state statutory law, 42 Pa.C.S.A. § 9545(b), was "independent" of federal law and "adequate," since at the time of Haddock's waiver,

---

[4]     Pursuant to 42 Pa.C.S.A. § 9545(b), a PCRA petition shall be filed within one year of the date the judgment becomes final, subject to three limited exceptions, none of which the Superior Court found applicable. The time requirement is mandatory and jurisdictional in nature.

Pennsylvania appellate courts consistently and regularly denied review of claims as waived when claims were not raised in the Rule 1925(b) statements and/or when not filed within the time proscribed by state statute. *See Commonwealth v. Castillo*, 888 A.2d 775, 779-80 (Pa. 2005) (holding that issues not raised in a timely-filed Rule 1925(b) concise statement are waived on appeal); *Commonwealth v. Murray*, 753 A.2d 201, 203 (Pa. 2000) (time requirement for filing PCRA petition is mandatory and jurisdictional in nature).

Haddock, relying on *Martinez v. Ryan*, -- U.S. ---, 132 S. Ct. 1309 (2012), contends that it was the ineffectiveness of his PCRA counsel that caused the default on these issues. For claims of ineffective assistance of trial counsel not preserved and thus defaulted on collateral review, *Martinez* provides a possible means for establishing cause to excuse the default. *Martinez*, 132 S. Ct. at 1315. As stated by Justice Kennedy in the majority opinion:

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding,[5] a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*. <u>To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.</u>

*Id*. at 1318-19 (emphasis added).

The clearly established federal law with respect to a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (a) that counsel's performance fall below an objective standard of reasonableness, and also (b) that the

---

[5] Pennsylvania requires claims of ineffective assistance of trial counsel to be raised in an initial-review collateral proceeding like a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (claims of ineffective counsel should be raised on collateral review).

petitioner suffer prejudice as a result of counsel's error. The Pennsylvania standard for ineffective assistance of counsel is identical to the federal standard. *Boyd v. Waymart*, 579 F.3d 330, 334 (3d Cir. 2009).

Turning to Claim Three, in essence Haddock argues that trial counsel "compelled" him to testify in exchange for jury charges on justification and voluntary manslaughter. In order to support an ineffective assistance of counsel claim for having the defendant testify, a petitioner must show that "(1) counsel interfered with his client's freedom to decide to testify, or (2) appellant can point to specific advice of counsel so unreasonable as to vitiate a knowing and intelligent decision to testify in his own behalf." *Commonwealth v. Martin*, 499 A.2d 344 (Pa. Super. 1985).

Haddock has provided the Court with no information that his trial counsel gave him advice that was so unreasonable as to "vitiate a knowing and intelligent decision to testify in in his own behalf." *Id.* In the certified statement attached to Haddock's first PCRA petition, trial counsel stated that he discussed the issue of testifying with Haddock "many times" and that they met on "numerous occasions" to prepare his trial testimony and that "we decided that it was in his best interests to testify." (Certified Statement, ECF No. 18-7 at 17.) Further, there is no evidence of record to demonstrate that Haddock was ever misinformed that he was required to testify in order for the jury to be instructed on justification or voluntary manslaughter.

The trial testimony reflects that Haddock's testimony was an integral part of his defense as he was attempting to explain his actions through his testimony. (Trial Testimony at 626-632). There is nothing in the record from which this Court could conclude that Haddock was compelled to testify or that counsel provided unreasonable advice concerning the decision whether or not to testify. The Court finds Haddock has failed to demonstrate that this claim has

some merit and, thus, has failed to meet the requirements of *Martinez* and *Strickland* to overcome the procedural default. Accordingly, it is recommended that Claim Three be dismissed.

As to Claim Four, the Superior Court held on direct appeal that Haddock was not entitled to the jury instructions on justification, voluntary manslaughter, and involuntary manslaughter. Although not binding on this Court, the Court finds the reasoning of the Superior Court on direct appeal instructive:

> The entirety of appellant's argument can be boiled down to a single contention – namely, the trial court erred in refusing to instruct the jury on justification, voluntary manslaughter, and involuntary manslaughter because a reasonable juror could have believed appellant was acting in self-defense when he fired twice at Katavitch's truck.
>
> We disagree. The evidence demonstrates, and appellant concedes, that after shooting at Katavitch the first time, Katavitch retreated to his truck. Appellant then made the *conscious decision* to pursue the conflict further by emerging from the vehicle in which he was sitting with his gun. As Katavitch passed appellant in an attempt to escape, appellant fired twice more. The final shot entered through the truck's rear bumper – after the truck, and any danger presented thereby, had passed.
>
> In light of these facts, appellant's challenges must fail.

*Commonwealth v. Haddock*, No. 1366 WDA 2005, slip op. at 7 (Pa. Super. Ct. 2007) (ECF No. 18-4). The Superior Court concluded that Haddock was not entitled to the very jury instructions that underlie the ineffectiveness claim of Claim Four. Therefore this claim has no merit and Haddock has failed to meet the requirements of *Martinez* and *Strickland* to overcome the procedural default. It is recommended that Claim Four be dismissed.

### D. Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Haddock's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

### E. Conclusion

For all of the above reasons, it is respectfully recommended that the petition for a writ of habeas corpus be dismissed. It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file written Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date

of service to respond to the objections. Failure to file Objections will waive the right to appeal.

*Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: May 12, 2016


cc: JAMES FRANCIS HADDOCK
    GE-9401
    S.C.I. Dallas
    1000 Follies Road
    Dallas, PA 18612
    (via U.S. First Class Mail)

    Keaton Carr
    Office of the District Attorney of Allegheny County
    (via ECF electronic notification)