# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JAMES FRANCIS HADDOCK, | ) |   |
|---|---|---|
|  | ) |   |
| Petitioner, | ) | Civil Action No. 2: 12-cv-0175 |
|  | ) |   |
| v. | ) | Judge Mark R. Hornak |
|  | ) |   |
| JOHN KERESTA, Superintendent, HON. STEPHEN A. ZAPPALA, Allegheny County District Attorney, and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA, | ) ) ) ) ) |   |
|  |  |   |
| Respondents. |  |   |

## OPINION

**Mark R. Hornak, United States District Judge**

James Francis Haddock, ("Haddock" or "Petitioner"), proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus by a Person in State Custody (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his convictions for first degree murder, attempted murder, aggravated assault, carrying a firearm without a license, and recklessly endangering another person. The case was referred to United States Magistrate Judge Cynthia Reed Eddy for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1) and the Local Rules for Magistrate Judges.

The Report and Recommendation ("R&R") filed on May 23, 2016, recommended that the Petition be dismissed and that a certificate of appealability be denied. (ECF No. 22.) The parties were informed that written objections to the R&R were due by June 14, 2016. Petitioner's timely request for an extension of time to file objections was granted and on July 19, 2016, Petitioner

1

filed his objections. (ECF No. 27.) Where, as here, objections have been filed, the court is required to make a *de novo* determination about those portions of the R&R to which objections were made. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The district court may accept, reject, or modify the recommended disposition, as well as receive further evidence or return the matter to the magistrate judge with instructions.

After reviewing *de novo* the record in this case, including the state court record and trial transcript, and the pleadings and documents filed in this case, together with the R&R and the objections thereto, the Court is in agreement with the ultimate recommendation of the R&R, but finds it necessary to supplement the analysis with regard to the dismissal of Claim Four of the Petition. But first, the Court will briefly address Petitioner's objections to the other portions of the R&R.

Petitioner raised four grounds for relief in his Petition. Claims One and Two were raised solely as state claims in the state court. The R&R recommended that both claims be dismissed because (1) both were presented only as state claims and (2) to the extent Petitioner is attempting to raise these claims as federal constitutional claims in his federal habeas petition, both are unexhausted and procedurally defaulted. Petitioner objects to the R&R's conclusion that both claims are unexhausted.

This objection can be rather summarily dismissed. Because both claims were presented only as state law claims to the state courts, both claims are not cognizable in this federal habeas corpus action. *See* 28 U.S.C. § 2254 ("[A court] shall entertain an application for a writ of habeas corpus in (sic) behalf of a person in custody pursuant to the judgment of a State court only

on the ground that he is in custody <u>in violation of the Constitution or laws or treaties of the United States</u>.") (emphasis added). Even assuming that Petitioner is attempting to now raise these claims as federal constitutional claims, both claims are unexhausted as these claims were never presented to any state court as a federal constitutional issue. Further, because state court remedies are no longer available, these claims are also procedurally defaulted. As the R&R correctly concluded, federal habeas review is not available for these claims as Haddock has provided no basis to overcome his default.

Claims Three and Four are interrelated layered-ineffective assistance of counsel claims.[1] In Claim Three, Petitioner claims that his PRCA counsel was ineffective for failing to raise trial counsel's ineffectiveness when trial counsel failed to advise Petitioner that neither the trial court nor trial counsel could "compel" him to testify in exchange for jury charges on justification and voluntary manslaughter. In Claim Four, Petitioner claims that his PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness when trial counsel failed to request a mistrial after the trial court seemingly changed its mid-trial ruling and declined to give jury instructions for justification and voluntary manslaughter. The R&R correctly concluded that both claims had been procedurally defaulted because both were held to be waived under firmly established Pennsylvania Rules of Appellate Procedure. The Magistrate Judge next determined that *Martinez v. Ryan*, -- U.S. ---, 132 S.Ct. 1309 (2012), provided no avenue for Petitioner to overcome the default.

---

1     At trial and sentencing, Haddock was represented by James R. Wymard, Esquire, and during his post-conviction proceedings, Haddock was represented by Patrick Nightingale, Esquire.

Specifically, the R&R recommended that Claim Three be dismissed because "there is nothing in the record from which this Court could conclude that Haddock was compelled to testify or that counsel provided unreasonable advice concerning the decision whether or not to testify." R&R at 17. Petitioner objects to this recommendation because the R&R does not reflect whether the Magistrate Judge reviewed his affidavit "wherein he provided a wealth of information regarding how he came to testify." Obj. at 2-3 (ECF No. 27.) This Court has independently reviewed Petitioner's "Certified Statement" (ECF No. 18-7 at 19) and Affidavit[2] (ECF No. 18-11 at 29) and concludes that neither his "Certified Statement" nor his Affidavit undermines the recommendation of the Magistrate Judge as to Claim Three. This Court agrees that there is no credible evidence in the record from which this Court could conclude that Petitioner was ever compelled to testify at all or that trial counsel provided unreasonable advice concerning the decision whether or not to testify. Absent some arguable merit to the underlying ineffectiveness claim, PCRA counsel cannot be ineffective for neglecting to raise the issue on collateral review.

As to Claim Four, while this Court agrees with the recommendation that Claim Four be dismissed, I arrive at this conclusion based on a combination of several factors.

First, I agree with Petitioner that the trial judge's actions in the case at bar are not meaningfully distinguishable from the trial judge's actions in *Commonwealth v. Rickabaugh,* 633

---

2   The Court notes that Petitioner's Affidavit was never properly presented to the PCRA courts as it appears that the Affidavit was attached only to Petitioner's *pro se* Brief filed with the Pennsylvania Superior Court, and was never presented to the PCRA trial court. However, in an abundance of caution, the Court has read and considered both the Certified Statement and the Affidavit.

A.2d 647 (Pa. Super. Ct. 1993). However, unlike the situation in *Rickabaugh*, I conclude that Haddock was not prejudiced by the trial judge's apparent change of heart with regard to his decision as to whether to give jury instructions on justification and voluntary manslaughter.

In *Rickabaugh,* the Superior Court of Pennsylvania found that defendants "would not have testified <u>but for</u> the court's representation that the defense of entrapment would be evaluated by the jury." *Id.* at 650-51 (emphasis added). As Judge Brosky, in his concurring opinion, remarked:

> Perhaps appellants would not have testified and admitted to smoking marijuana, possession marijuana and giving marijuana to Mary Specht if they had known that the trial court would not give a jury charge on entrapment. However, I believe that the failure to give a jury charge on entrapment was not as damaging to appellants' case as the trial court's indication to appellants that it would submit the entrapment issue to the jury: <u>that trial court action provided inducement to appellants to testify and absent their highly damaging testimony it is quite conceivable that the jury may not have convicted them of possession of marijuana, possession with intent to deliver marijuana and conspiracy, regardless of the giving or withholding of any jury charge on entrapment.</u>

*Id.* at 651 (Brosky, J., concurring)(emphasis added). The record before this Court does not support Haddock's argument that he relied upon or was induced to testify based on the trial court's initial rulings in his case. In fact, the record directly belies this argument. The "certified statements" of both Petitioner and Attorney Wymard reflect that trial counsel met with Haddock on "numerous occasions" to prepare his trial testimony. (ECF Nos. 18-7 at 17 - 19.) Attorney Wymard's "certified statement" also states that both Haddock and he "decided it was in [Haddock's] best interests to testify." (ECF No. 18-7 at 17). Notably, Attorney Wymard's statement does not reflect that the trial strategy to have his client testify was induced or changed in any matter based on the trial judge's mid-trial initial or ultimate rulings on anticipated jury

5

instructions, but rather Attorney Wymard's statement clearly reflects that from the very outset, the core trial strategy was for Haddock to testify. *Thomas v. Varner,* 428 F.3d 491, 499 (3d Cir. 2005), *cert. denied,* 549 U.S. 1110 (2007) ("To overcome the *Strickland* presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy.").

Presumably based on their discussions, Attorney Wymard promised in his opening statement, prior to any evidence being introduced or any jury instruction rulings (tentative, final or otherwise) by the court, that the jury "will hear a defense in this case for sure. You will hear from the defendant. He will take the stand and testify." (Trial Tr. at 41.) Counsel then proceeded to deliver a detailed description of the anticipated trial testimony of various witnesses. He told that jury that when Eric Katavitch could not find Robbie Golofsky, Katavitch took Haddock's car keys and stated:

> "I got your keys. I'm going to ask you again, where is Robbie" -- or where the F is Robbie.
>
> Now we have an act of aggression. We have a statement being made by Eric Katavitch at which point James pulls out a gun. He recognizes his keys. He shouldn't have done it. We are not hear to justify it in any way. I want you to understand that. He pulls out a gun and shows the gun to Katavitch. Katavitch, upon seeing the gun, takes off and starts running to the back of the car. You will hear that from the witnesses in this car. James fires one across the driver. He is in the front passenger, driver sitting next to him. Katavitch is at the rear of the car when James fires out the window into the ground and screaming, "you got my keys, where are my keys?" . . . [Katavitch] takes off when he sees the gun in his hands. He is nowhere near where the shot is being fired, members of the jury. Listen to the witnesses in the car when they tell you where he is when that first show is fired.

> Now, he has gone back to his truck, which is parked right behind their car. He jumps in the truck, revs up the engine. James gets out of the car. Not a good move. Not justifying it at all. He gets out, opens up the door. ... So when he gets in his vehicle to take off, James gets out with his gun saying where are my keys. The guy - - - and listen to the witnesses - - comes driving right at him and misses him by literally inches. He does fire two or three times trying to scare him and trying to say where are my keys, give me my keys to my father's car. He believes he fires in the air.

(Trial Tr. at 49 – 51.) Based on these statements, the jury plainly was expecting to hear from Haddock; a failure to later present the Defendant's testimony may well have prejudiced the jurors against him, no matter what the trial judge later stated as to an anticipated jury charge on justification or voluntary manslaughter.

Furthermore, Haddock's testimony was an integral part of his defense at trial. The defense called three witnesses in its case-in-chief. First up was Detective Robert Ladley, who testified that he interviewed Eric Katavitch after the shooting, and that Katavitch told him that he had been shot at only one time and then he ran back to his truck. (Trial Tr. at 538 – 540.) Next up was Nicholas Vesely, who testified that he was sitting in the driver's seat of the car while Haddock sat in the front passenger seat. According to Vesely, after Haddock realized that Katavitch had the keys to his (Haddock's) car, Haddock reached across him (Vesely), with his arm near the steering wheel, and fired his gun towards the ground. He also testified that Haddock then stepped out of the car, and the pickup truck driven by Katavitch, travelling very fast, came within six inches of hitting Haddock. The third and final witness to testify was Haddock. He testified, *inter alia*, that he fired his gun out of the car's window in order to scare Katavitch and when he did not get his keys back, he (Haddock) stood in the street, and had to move out of the way so he would not get hit by the truck:

7

> I fired the gun just to scare him, to get him away from me. I am figuring if he sees the muzzle of this weapon he might move onto his side of the road and keep going on over to something besides what he was doing.
>
> . . .
>
> I remember firing [the shots] in the air . . . just trying to scare the man to get on his side of the road and away from me.

(*Id.* at 631.) Haddock consistently testified that he fired the shots only in the air and only to scare the driver: "I feared for my life at that point. He is coming at me full throttle and I fired two shots into the air." (*Id.* at 664.) Haddock's testimony closely mirrors the description of events as described by his attorney in the opening statements. There was no dispute that Haddock was the shooter; thus, only his testimony could explain his actions. For these reasons, the Court concludes that Haddock has not demonstrated that he was induced to testify by any ruling of the trial court and he was not prejudiced by the trial judge's final ruling on the disputed jury instructions.

Second, I conclude that Haddock has not demonstrated that trial counsel's failure to request a mistrial was not the result of a rational, strategic, or tactical decision by his counsel, an experienced criminal defense lawyer. Counsel's decision would have been grounded in the fact that Haddock faced a first degree murder charge and Haddock's testimony was the only way the jury would hear his "story." In other words, Haddock's own testimony was the only evidence that would support a verdict of anything less than first degree murder. Certainly, in light of the seriousness of the charges against Haddock, this Court cannot conclude that such a strategy would have been irrational or not based on sound trial strategy. *Werts v. Vaughn*, 228 F.3d 178, 190 (3d Cir. 2000), *cert. denied*, 532 U.S. 980 (2001) ("ineffectiveness will not be found based on a tactical decision which had a reasonable basis designed to serve the defendant's interests.")

(*citing Strickland*, 466 U.S. at 690-91). Nonetheless, even if this Court were to conclude that counsel's actions had an insufficiently rational or strategic basis, Haddock cannot plausibly argue that he suffered prejudice as a result of his trial counsel's failure to seek a mistrial.

The evidence against Haddock was overwhelming. It is improbable that the outcome of his trial would have been different had Haddock not testified. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'")(*quoting Strickland*, 466 U.S. at 687.)) Here's why. As the Supreme Court of Pennsylvania has explained:

> Evidence is sufficient to sustain a conviction of first-degree murder where the Commonwealth establishes that a human being was unlawfully killed, that the person accused did the killing, and that the accused acted with a specific intent to kill. *Commonwealth v. May*, 584 Pa. 640, 887 A.2d 750, 753 (2005). An intentional killing is one that is willful, deliberate, and premeditated. 18 Pa .C.S. § 2502(d).

*Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007); *Commonwealth v. Bomar*, 826 A.2d 831, 840 (Pa. 2003). In Haddock's case, the Commonwealth called eleven (11) witnesses in its case in chief. Among these witnesses was Eric Katavitch and two of the men who were sitting in the car with Haddock when the shots were fired. Katavitch testified that he mistakenly thought the keys he had taken belonged to Robbie Golofsky. When he was told that these were not Golofsky's keys, he said he was sorry and was going to hand the keys to the passenger in the front seat, but:

> He was holding the gun. He had it pointing at me as I was walking up. I was trying to hand him the keys and the gun was going all over the place. He was screaming that he was blowing my head off. There was no reasoning with him,

9

> nothing. He was going completely ballistic. . . . I don't know what happened after that point. The first round he shot went right by my left ear. . . . At that point I took a mad dash to my truck and he was shooting at that point.

(Trial Tr. at 170-71.) Thus, Katavitch's testimony was more than sufficient to convict Haddock of premediated first degree murder. *Cooper,* 941 A.2d at 662.

Haddock has advanced no plausible evidence which would show that even had trial counsel requested a mistrial, the trial court would have granted the request. When asked by defense counsel about its decision not to give the justification charge, the trial court responded:

> That's why I called you up, Mr. Wymard. It was not reflective of any rule that I have made or anticipated making because after Mr. Beemer placed his argument on the record, I asked – you can see by the number of books next to me – I made an independent assessment and I agreed with his argument and I was wrong the first time I started talking and readily admit it.

(*Id.* at 696.)

But even assuming that a mistrial would have been granted if requested, Petitioner fails to indicate how the outcome of a new trial would have been different, especially in light of the overwhelming evidence against him. *Strickland,* 466 U.S. at 696. Given the Commonwealth's evidence, Petitioner has not shown that without his testimony at a new trial (the best possible result of a mistrial from Haddock's standpoint) that there is a reasonable probability that the outcome of a new trial would be any different. *Id.* at 694 (stating that "a reasonable probability is a probability sufficient to undermine confidence in the outcome.").

For all these reasons, the Court cannot conclude that counsel's failure to request a mistrial so seriously undermined the confidence in the outcome of the case so as to render the trial fundamentally unfair. *Albrecht v. Horn,* 485 F.3d 103, 124 n.7 (3d Cir. 2007), *cert. denied,* 552

U.S. 1108 (2008) (noting that the prejudice required to excuse procedural default is more than the possibility of prejudice, but that the errors at trial "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.")(*quoting Murray v. Carrier*, 477 U.S. 478, 494 (1986)(*quoting United States v. Frady*, 456 U.S. 152, 170 (1982)). Absent merit to the underlying claim, PCRA counsel cannot be ineffective for neglecting to raise this issue on collateral review. *Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir.), *cert denied sub nom. Glenn v. Walsh*, -- U.S. ---, 134 S.Ct. 2700 (2014)(*citing Martinez*, 132 S.Ct. at 1319.). Ultimately, this Court concludes that Haddock has failed to establish the "prejudice" in "cause and prejudice" needed to overcome the procedural default of Claim Four. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In sum, the Court is in agreement with the conclusion of the Report and Recommendation as supplemented herein and concludes that the Petition should be denied in its entirety and a certificate of appealability should be denied.

An appropriate Order will issue.

/s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated: January 10, 2017

cc: JAMES FRANCIS HADDOCK
GE-9401
S.C.I. Dallas
1000 Follies Road
Dallas, PA 18612

Keaton Carr
Office of the District Attorney of Allegheny County

11